Albert A. Ciardi, III, Esquire
Jennifer C. McEntee, Esquire
Daniel S. Siedman, Esquire
CIARDI CIARDI & ASTIN
One Commerce Square, Suite 3500
2005 Market Street
Philadelphia, PA 19103
(215) 557-3550
Attorneys for the Debtor
aciardi@ciardilaw.com
jcranston@ciardilaw.com
dsiedman@ciardilaw.com

| | |
|---|---|
| IN RE: | : |
| | : CHAPTER 11 |
| J.G. NASCON, INC., | : |
| | : BANKRUPTCY NO. 15-18704-MDC |
| Debtor. | : |
| | : |

## MOTION OF J.G. NASCON, INC. FOR AN ORDER (I) PURSUANT TO 11 U.S.C. §§ 105(A) AND 363 AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002, 6004 AND 9013 AUTHORIZING THE SALE OF THE 2004 JOHN DEERE 544J LOADER FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES, AND FOR (II) RELATED RELIEF

J. G. Nascon, Inc. (the "Debtor"), by and through undersigned counsel, Ciardi Ciardi & Astin, hereby submits this motion for the entry of an order authorizing the sale the 2004 John Deere 544J Loader, described herein, free and clear of liens, claims and encumbrances, and granting related relief (the "Motion"), and, in support thereof, respectfully avers as follows:

### JURISDICTION

1. The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), (N) and (O). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief

requested herein are §§105 and 363 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2002, 6004 and 9013.

## BACKGROUND

2. On December 4, 2015 (the "Filing Date"), the Debtor filed a voluntary petition for reorganization pursuant to chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code").

3. Since the Filing Date, the Debtor has remained in possession of its assets and continued management of its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4. An official committee of unsecured creditors (the "Committee") has not yet been appointed.

5. The Debtor is a heavy and highway construction Property located in Eddystone, Pennsylvania providing full-service site contracting to the tri-state region.

6. As of the Filing Date, the Debtor has approximately 25 employees.

7. In 2004, the Debtor purchased a John Deere 544J Loader with s/n DW544JT590799 (the "544J Loader") with an estimated value of approximately $42,500.00.

8. Prior to the Filing Date, M&T Bank (the "Lender") made various loans to the Debtor (collectively, the "JG Nascon Loans"), including to finance the purchase of the 544J Loader.

9. The Lender claims a first position, blanket lien on all of the Debtor's assets, tangible and intangible, including the 544J Loader, pursuant to the following loan documents:

  a) <u>The Line of Credit</u> – On or about June 26, 2013, the Fourth A&R Note was amended and restated in its entirety by that certain Amended and Restated

Revolving Demand Note in the original principal amount of $3,350,000 dated June 26, 2013 (the "A&R LOC Note"), which was subsequently amended through January 15, 2014.

   b) <u>The 2012 Term Loan</u> – On or about July 27, 2012, the Lender made a term loan to the Debtor in the original principal amount of $300,000 evidenced by a loan agreement and term note of the same date.

   c) <u>The 2013 Term Loan</u> – On or about October 1, 2013, the Lender made a term loan to the Defendant in the original principal amount of $750,000 evidenced by a loan agreement and term note of the same date.

10. In September 2014, the Lender confessed judgment against the Debtor in the amount of $4,321,207.33 in the Court of Common Pleas of Delaware County, Pennsylvania. That judgment was subsequently opened and subject to litigation as of the Filing Date.

11. As of the Filing Date, the Debtor owned, and continues to own, the 544J Loader.

12. The Debtor seeks to sell the 544J Loader for no less than $42,500 and has actively marketed the 544J Loader.

13. The Debtor seeks to sell the 544J Loader to Peak Equipment, LLC (the "Buyer") for a total purchase price of $42,500.00 (the "Purchase Offer").

14. The closing on the Purchase Offer and subsequent agreement of sale shall occur within five (5) days after the Bankruptcy Court approves the same.

15. The Purchase Offer contemplates the sale of the 544J Loader to the Buyer for the Purchase Price. The Buyer is unrelated to the Debtor or any of the Debtor's affiliates, officers, or agents.

16. The Debtor and Lender have agreed to a distribution of the sale proceeds. The sale proceeds will serve as a principal curtailment payment to reduce the principal balance due and owing to M&T Bank in connection with the JG Nascon Loans.

17. The Lender has advised the Debtor that the Lender will consent to the sale of the 544J Loader provided that the Lender receives, upon the closing of the sale, the total of $36,125.00 for the 544J Loader ("Sale Payment"). Nothing in the Motion or this Order shall alter or relieve Debtor of its obligation to make all adequate protection payments to M&T Bank when due in accordance with the terms of any cash collateral order entered by this Court.

18. The Debtor avers that, with the sale of the 544J Loader, the Debtor's estate will receive a total of $6,375.00 to assist in its reorganization efforts.

## THE BASIS FOR RELIEF AND THE REASONS THEREFOR

19. By this Motion, the Debtor seeks the entry of an order by the Court:

   a) at the Sale Hearing pursuant to section 363 of the Bankruptcy Code approving the sale of the Equipment free and clear of liens, claims, encumbrances and interests (the "Sale Approval Order").

20. The reasons and authority for the entry thereof are discussed in detail in the Motion.

## THE SALE APPROVAL ORDER

21. The Debtor seeks the entry of an order pursuant to section 363 of the Bankruptcy Code, approving any Agreement of Sale and the sale of the 544J Loader in all respects, free and clear of any and all liens, claims, encumbrances and interests in the 544J Loader. The Sale Approval Order reflects the terms of the current Purchase Offer but will ultimately reflect the terms of the Agreement of Sale contemplated by the Purchase Offer.

22. Pursuant to section 541 of the Bankruptcy Code, the property to be sold to the Buyer under the Purchase Offer (the "Sale"), is an asset of the Debtor's bankruptcy estate.

23. In accordance with sections 363, 1107 and 1108 of the Bankruptcy Code, debtors-in-possession are authorized to sell property of the estate and maximize recoveries for their creditors.

24. Section 363(b) of the Bankruptcy Code authorizes a debtor or a trustee to sell its assets outside of the ordinary course of business. See 11 U.S.C. § 363(b)(1).

25. Section 363(f) of the Bankruptcy Code provides, in pertinent part, as follows:

> (f) [t]he trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

26. Generally, a debtor must show that each of the following elements have been met before a section 363(b) sale may be approved: (i) that a sound business reason exists for the proposed transaction; (ii) that the sale has been proposed in good faith; (iii) that the sale price is fair and reasonable; and (iv) that accurate and reasonable notice has been provided of the transaction. See In re WDH Howell, LLC, 298 B.R. 527, 534 (D. N.J. 2003); In re Stroud Ford, Inc., 163 B.R. 730 (Bankr. M.D. Pa. 1993).

27.     Although section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of the estate, bankruptcy courts routinely authorize sales of a debtor's assets if such sale is based upon the sound business judgment of the debtor. In re Dura Automotive, 2007 Bankr. LEXIS 2764 at *258, (citing Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996)); Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070 (2d Cir. 1983); In re Abbotts Dairies of Penn., Inc., 788 F.2d 143 (3d Cir. 1986) (implicitly adopting the "sound business judgment" test of Lionel Corp. and requiring good faith); In re Del. And Hudson Ry. Co., 124 B.R. 169 (D. Del. 1991) (concluding that the Third Circuit adopted the "sound business judgment" test in the Abbotts Dairies decision); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (D. Del. 1991) (same).

28.     Courts have made it clear that a debtor's showing of a sound business justification need not be exhaustive, but rather a debtor or trustee is "simply required to justify the proposed disposition with sound business reasons." In re Baldwin-United Com., 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984).

29.     Whether or not there are sufficient business reasons to justify a sale depends upon the facts and circumstances of each case. In re Lionel Com., 722 F.2d 1063, 1071 (2d Cir. 1983).

30.     In the circumstances of valid business justifications, applicable principles of law attach to a debtor's decision a strong presumption "that in making a business decision[,] the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the Property." Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1990) (holding that the Delaware business judgment rule has "vitality by analogy" in chapter 11), (quotations omitted).

31. Therefore, the Debtor submits that the decision to sell the 544J Loader is based upon its sound business judgment and should be approved. The Debtor's operations will not be diminished by the sale of the 544J Loader. Moreover, the Debtor feels that the distribution to the Debtor's Lender and the monies remaining will significantly assist the Debtor in its plan for reorganization. The Debtor thus believes that the sale of the 544J Loader will provide the best result for its estate and creditors.

32. Once a court is satisfied that there is a sound business justification for the proposed sale, the court should then determine whether (i) the debtor in possession has provided the interested parties with adequate and reasonable notice, (ii) the sale price is fair and reasonable, and (iii) the purchaser is proceeding in good faith. In re Del. and Hudson Ry. Co., 124 B.R. at 166; accord In re Decora Indus., Inc., Case No. 00-4459, 2002 WL 32332749, at *3 (Bankr. D. Del. May 20, 2002.).

33. "The requirement that a purchaser act in good faith...speaks to the integrity of his conduct in the course of the sale proceedings." In Re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 142, 147 (3d Cir. 1986). "Typically, the misconduct that would destroy s purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." Id.

34. Here, the Purchase Offer was negotiated at arm's length after a marketing process conducted by the Debtor.

35. The Buyer, is not controlled by, or acting on behalf of any insider of the Debtor.

36. Thus, the Debtor submits that the proposed sale to Buyer constitutes a sale in good faith and for fair value within meaning of Section 363 of the Bankruptcy Code and, specifically, should be afforded the benefits and protections provided by section 363(m) of the Bankruptcy Code in connection with the sale of the 544J Loader. See id.

37. Section 363(m) of the Bankruptcy Code protects the sale of a debtor's property to a good faith purchaser. Section 363(m) provides,

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. §363(m).

38. Section 363(m) of the Bankruptcy Code thus protects the good faith purchaser of assets sold pursuant to section 363 of the Bankruptcy Code from the risk that it will lose its interest in the purchased assets if the order allowing the sale is reversed on appeal. By its terms, section 363(m) of the Bankruptcy Code applies to sales of interests in tangible assets. Additionally, the United States Court of Appeals for the Third Circuit (the "Third Circuit") has indicated that section 363(m) of the Bankruptcy Code also protects the assignee of a debtor's interest in executory contracts under Bankruptcy Code 365. See Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc., 141 F.3d 490, 497-98 (3d Cir. 1998). In Krebs, the Court considered "whether assignments of [certain automobile dealership] franchises under section 365 are also sales of estate property subject to section 363(m)." Id. at 497. Despite the absence of an explicit reference to assignments of executory contracts under section 365 of the Bankruptcy Code, the Court in Krebs concluded that section 363(m) of the Bankruptcy Code protected an assignment of a debtor's interest in certain automobile franchise agreements pursuant to an auction sale. Like the franchise agreements protected in Krebs, the Debtor respectfully submits that section 363(m) applies to protect the Buyer (or other successful bidder) with respect to the 544J Loader and any ancillary assignments thereof.

39.  Although the Bankruptcy Code does not define "good faith," the Third Circuit has noted that the phrase "encompasses one who purchases in 'good faith' and 'for value.'" In re Abbotts Dairies of Pa., Inc., 788 F.2d 143, 147 (3d Cir. 1986). Further, the Third Circuit has recognized that the type of misconduct that would destroy a purchaser's good faith status involves 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.' Id. (remanding case involving insider transaction back to the bankruptcy court for further consideration of good faith where there was evidence that the sale had been orchestrated between insiders and some of the sale conditions were not disclosed to the debtor's creditors) (quoting In re Rock Indus. Machine Corp., 572 F.2d 1195, 1198 (7th Cir. 1978)). Due to the absence of a bright-line test for good faith, the determination is based on the facts of each case, concentrating on the "integrity of [an actor's] conduct during the sale proceedings." See, e.g., In re Stroud Ford, Inc., 163 B.R. 730, 732-33 (Bankr. M.D. Pa. 1993); In re Pisces Leasing Corp., 66 B.R. 671, 673 (E.D.N.Y. 1986) (quoting In re Rock Indus. Machine Corp., 572 F.2d at 1198).

40.  As will be further demonstrated at the Sale Hearing, the sale of the 544J Loader was proposed in good faith as a result of arms' length negotiations between the Debtor and the Buyer. Under such circumstances, the Debtor submits that the Buyer (or successful bidder, if not the Buyer) should be afforded the protections that section 363(m) of the Bankruptcy Code provides to a good faith purchaser.

41.  The Debtor believes that the prompt sale of the 544J Loader, as proposed, is in the best interests of the creditors and the estate. The Debtor believes that the Purchase Price is fair and reasonable under the circumstances.

42.  The Sale of the 544J Loader should be free and clear of any and all liens, claims, and encumbrances in accordance with section 363(f) of the Bankruptcy Code, with holders of any such

liens, claims and encumbrances being paid from the proceeds of the Sale of the 544J Loader and/or being given replacement liens, claims, and encumbrances attaching to the proceeds of the Sale of the 544J Loader.

43. Pursuant to section 363(f) of the Bankruptcy Code, a debtor in possession may sell property of the estate "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied:

    (a) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

    (b) such entity consents;

    (c) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

    (d) such interest is in bona fide dispute; or

    (e) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. §363(f).

44. The Debtor requests that the Court authorize the Sale of the 544J Loader free and clear of all liens, claims, encumbrances, and other interests (collectively, the "Liens and Claims"). The Sale of the 544J Loader is being consented to by the Lender pending the distribution as set forth above. All other parties in interest (if any) will be given sufficient opportunity to object to the relief requested herein and any such entity that does not object to the Sale of the 544J Loader should be deemed to have consented. See Futuresource LLC v. Reuters Ltd., 312 F.3d 281, 285-86 (7th Cir. 2002) ("It is true that the Bankruptcy Code limits the conditions under which an interest can be extinguished by a bankruptcy sale, but one of those conditions is the consent of the interest holder, and lack of objection (provided of course there is notice) counts as consent. It could not be

otherwise; transaction costs would be prohibitive if everyone who might have an interest in the bankrupt's assets had to execute a formal consent before they could be sold.") (internal citations omitted); Hargrave v. Twp. of Pemberton (In re Tabone, Inc., 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (failure to object to sale free and clear of liens, claims and encumbrances satisfies section 363(f)(2)). To the extent that no party holding a lien or claim objects to the relief requested in the Sale Order, the Sale of the 544J Loader free and clear of all liens and claims satisfies section 363(f)(2) of the Bankruptcy Code. To the extent a party holding a lien or claim objects to the relief requested in the Sale Order, the Sale of the 544J Loader free and clear of such liens and claims satisfies one or more of sections 363(f)(1) or (2)-(5), as applicable.

45. Accordingly, the Debtor requests that the 544J Loader be transferred to the Buyer free and clear of all liens, claims, encumbrances, and interests with the same to attach to the net sale proceeds of the 544J Loader.

## APPROVAL OF THE AGREEMENT OF SALE IS WARRANTED

45. The applicable principle of law with respect to the approval of asset sales in bankruptcy is stated in the case of In re Lionel Corp., 722 F.2d 1063 (2d Cir. 1983). The Court in Lionel held that approval of a sale is appropriate if the court finds the transaction represents a reasonable business judgment on the part of the debtor. See also, Stephens Industries v. McClung, 789 F.2d 3863 (6th Cir. 1986); In re Coastal Industries, Inc., 63 B.R. 361 (Bankr. N.D. Ohio 1986), In re Baldwin United Corp., 43 B.R. 888 (Bankr. S.D. Ohio 1984).

46. In light of the foregoing, the Debtor has determined that the Sale to Buyer on the terms and conditions set forth in the Purchase Offer (and subsequent Agreement of Sale) are appropriate and in the best interest of its estate and all parties in interest.

WHEREFORE, the Debtor respectfully request that this Court (i) enter an Order approving the sale of the 544J Loader in a form substantially similar to the attached proposed form of Order, and (ii) grant such other and further relief as this Court deems just.

**CIARDI CIARDI & ASTIN**

Dated: July 14, 2017

By: *Daniel S. Siedman*
Albert A. Ciardi, III, Esquire
Daniel S. Siedman, Esquire
One Commerce Square, Suite 3500
2005 Market Street
Philadelphia, PA 19103
Attorneys for the Debtor and
Debtor-In-Possession